18-18-231, Capt. Express, Inc. v. Jennifer Hammer Matthew LeBrecht, appearing on behalf of Capt. Express, the appellant. I'm Assistant Attorney General Mary LeBrecht, appearing for the Department of Insurance and its director. Good morning, Your Honors. James Barnes, BAR, NES, appearing on behalf of Liberty Mutual Insurance Corporation, defendant, appellee. So, I'm going to ask, since you're the one in the middle, I'm going to ask you, do you want some time? I'm saying you can have it, I'm not saying yes or no, I just want to know whether you are prepared to argue. When Liberty Mutual will start, it will take five minutes, if that sounds fair? That's fine, that's fine. And then you'll take? Ten to fifteen. Ten to fifteen, okay, and then some time for rebuttal and? Three minutes. Okay, okay. Thank you. I just want to reiterate, you've heard this, but just in case you came in later, it's only for recording purposes, not amplification, and we like people in the back to be able to hear everything, so thank you. May it please the Court, Counsel, I'm Matthew Bradd, again, I'm Matthew Bradd, appearing on behalf of CAT Express, Inc., and when this Court asked for a supplemental briefing on the question of jurisdiction, it actually raised an issue that I admittedly did not give enough thought to. I gave thought to it, but not enough, and it does raise an important question, obviously, who does the law say should be deciding the issues in this case, but it also raises a follow-on question. Even if there is jurisdiction with the Department of Insurance, how much deference does that decision earn? Now, in this case, we have the Department of Insurance and its hearing officer made a decision that, for the reasons set forth in our brief, his factual findings, we argue not only ignored material evidence, but they didn't support his conclusions. But the question is, how could he have made that decision that's at odds with the very, at the time of the decision, very recent prior decision as Skinka v. Illinois Workers' Comp Commission, which we painstakingly shown in our briefs is almost directly on point. How could he have made a decision that was at odds with Early v. Industrial Commission, which is another workers' comp case, which analyzed the relativity test that's relied upon by Liberty Mutual and found on very similar facts that there was independent, that the driver, that the owner-operators in that case were independent contractors. Let me ask a different question. Yeah. What's the issue here? The issue here is relative. I mean, how do you define the issue, it seems to me, to go to the heart of this question that we asked you to brief? The question here is, are the drivers independent, were the owner-operators independent contractors or were they employees? That's the question. Were they not? So we know that NCCI said, it's not us. So the question is, who is it? Is it the Department of Insurance or is it somebody else? When my client made their initial appeal to the NCCI, they were told specifically. I don't know what they were told, but that doesn't mean anything. Just because NCCI says go to the Director of Insurance, even the state concedes, Attorney General concedes that, well, we're not really sure. It seems to me that's why I have a very short response. But whatever you do, that's fine. I mean, I'm not trying to put words in your mouth and you can tell me if I'm wrong, but basically they're kind of saying, well, yeah. It's a difficult question. Because people like my client have a very difficult position. What do we do? Just because you went there, I mean, that's not the end of the question. That's only the beginning of the question. The question doesn't go away. So the question still is, whatever we decide, we're sitting in a precedent here, okay. So where should this type of case be decided? And we know it was decided by the Department of Insurance. The question still is, is that appropriate? And I know both sides, you know, before we even get to the merits, let's down the road. That's the question that we asked you to bring. In this case, well, this case is about premiums. And it's about workers' comp premiums. And when my client bought the policy, he bought clerical, which is pennies on the dollar per hundred. That's how much the workers' comp insurance costs him for a year. It was $1,200. The rating on long-haul truckers is either $22 or $24 per hundred. All right, we understand that. But how, again, if the issue is a question of whether these individuals are employees or not, correct? Correct, yes. Why should the Department of Insurance? It's not explicit. Everybody agrees it's not explicit in there, right. So why does that come under the insurance code? In all reality, the Workers' Comp Act does specifically state that this is a question for, the question of employee, employer, independent contractor is a question for the Workers' Comp Commission. But there's an injury. When there's been an injury, there's a claim. You have to have a claim for the workers' comp. That's how we can get in there. Right. But the case law is unanimous here that they're the ones with the agency expertise to make that decision. On a claim. When there's a claim. When somebody's been injured. Right. There is no injury here. Well, I would argue there's an injury to my client, but it's not an injury. Under the Workers' Comp Act, this is a question of who should be covered. It's a coverage question. Whether they're an employee or an independent contractor, right? That's what you said. Right, but one leads to the other. Should you be covered? Well, you should be covered if there's going to be an injury. No, no, that's what I'm saying. But that's not really the issue. Still, the issue is, under the facts of this case, are these individuals independent contractors or employees? Right. Okay. We know the department went through everything and came up with the decision. We got it. Still, that's not the end of the question. Is there other avenues, for example, a deck action? I guess there could have been a deck action. Why wouldn't a deck action be more appropriate? Or why isn't it appropriate? If it could be, why would you go to the insurance department? How is that? The briefs don't discuss deck actions at all. I'm not sure even the words are mentioned. But there is an alternative. And what happens when policies need to be interpreted? Who do we go to? We go to the insurance commissioner, or do you go to somebody else? When policies need to be interpreted, maybe the insurance commissioner. But in this case, we're not talking about the policy. We're talking about the employer. So why wouldn't a deck action be appropriate? It would be. It could be appropriate. I concede that. In this case, the reason that it went to the DOI, my client appealed it and appealed it to DOI because that's what he was told to do. And then after the hearing was set, we became involved. Well, the question becomes if the NCCI had put in the letter, we don't have jurisdiction over this issue, you can now appeal to the Illinois Department of Professional Regulation. I think you would agree that that would not give the Illinois Department of Regulation jurisdiction over your problem with the insurance company, correct? I would agree with that. Yeah, okay. So that's where we start on this problem. If we ultimately get to the question of employee versus independent contractor, then we would have the standard, I think, non-controversial standards for reviewing an administrative decision. So I think what we're focusing on is really the jurisdictional question. And if I could suggest, this is a closer question than that. And the reason it's a closer question is it does involve workers' comp premiums, which are based on, obviously, the rates for those workers' comps. So where we have clerical, which my client had purchased, which is 22 cents per hundred, versus long-haul trucking, which is $22 to $24 per hundred. It's a material difference, and it did involve workers' comp. As I understand it, though, your complaint was not that they were misclassified as clerical versus truckers. It was they're assessing the NCCI premium to too many people. We don't have that number of people. It's not whether they're clerical. It's not whether they're over-the-road truckers. It's we don't have 58 employees. We have six. So it's a question of contract, of whether the contract is being appropriately applied. The rating system tells Liberty, you're going to, or the NCCI assigned your company to Liberty, and Liberty was obligated, as I understand it, to classify the employees by classification, clerical, trucker, whatever, and apply the NCCI premium. Correct? Yes. Okay. When they did all that, they came in under the contract, which they were allowed to do, and do an audit to see whether they had the appropriate number of employees from their perspective, and see whether they were applying the appropriate premium. Correct? That's all under the NCCI umbrella. Correct? Yes. Okay. When they told you, our audit revealed you have 50 or 60 more employees, and they're over-the-road truckers, you owe us $300,000. The issue was not whether the premiums were correct or the classification was correct. It was, these are our employees, period. Correct? I agree. Okay. So that's where the jurisdictional question comes in, because under 462, the NCCI said, you can go appeal to the Department of Insurance under 462, but that specifically says anybody aggrieved by the application of the rating system. We're not talking, I don't think you're talking about an application of the rating system. You're talking about status. We are definitely talking about status with respect to application of the rating system. I guess that language is a bit ambiguous to us because it says, because at this point we were, CAT Express was concerned that it has these employees that are rated at this. But I do agree with you that the principal question here is employee versus independent. It wasn't that, no, we have six employees that are secretaries, and they're saying we have six employees that are over-the-road truckers, different premium. That's not what the dispute was. Correct? I agree. Okay. All right. I do agree with that.  To the extent that there is jurisdiction in this case within the Department of Insurance, as Liberty Mutual argues, and we conceded for this purpose, the question is, okay, is this a question of within their agency expertise? And at that point, is it entitled to deference? And the point that I was making is, no, this was outside their expertise because of what the Workers' Comp Act does say about who makes that decision. In previous cases, Liberty Mutual itself in the previous cases has pointed to a Continental Western case which said that the Workers' Comp Commission, not the Illinois Department of Insurance, has, quote, specialized knowledge and expertise in deciding this question. And the reason that we give deference to lower agency decisions is because that agency is supposed to have experience and expertise in the question at hand, which was recognized in the cases that we cited. Well, it still depends upon the question presented. It does. Whether it's a legal question, whether it's going to be a de novo review, or whether it's a legal and factual question, clearly erroneous, or whether it's strictly a factual question. Well, let me address that. Because if the whole purpose for the deference is because that particular agency has expertise, so if you look at the Eskinca decision or early or any of these Workers' Comp cases, that's because the Workers' Comp Commission has the agency expertise to make the independent contractor employer decision. We still look to the question that we're reviewing. We never stop that. Those principles always apply in terms of the way an appellate court reviews a decision of an agency, a trial court. It still depends upon the question being reviewed. We can't ignore that. Okay. I agree with that. I think that the question becomes if we are reviewing this question, what is our standard? In this case, I would suggest that we have to look at this with fresh eyes. And the reason is because of what I said. The agency below is only entitled to deference because the cases say because they have specific expertise in that question. If we look at this case with fresh eyes. So you believe there's a de novo review here? I do. I do. And, frankly, when I have to concede, it wasn't until the court raised the question that we got to that point. With fresh eyes, I think this case, with fresh eyes, my clients, former operators, are independent contractors. No deference to the administrative agency. That's your position. That's my position, yes. And the owner-operators, to the extent that they directly contracted, there would be independent contractors. And the owner-operators' own drivers would also be independent contractors. And I believe the Attorney General's office agrees with you on this issue. Based on the supplemental brief, I had the impression that they were saying, we don't have an opinion on this issue. And I don't know. But if we do look at it, if we do take a clear, fresh eye look at this, not that we necessarily have to because there were material omissions of actual facts in the evidence that the hearing officer didn't even consider. And I want to, they're laid out before in our brief. I want to point out two of them. One of them was, and we had a lot of briefing about this, about owner-operator versus driver. And that question is actually an essential question in this case. And there were two owner-operators that we discussed at length on the record. One was IGV Express. And IGV Express is a separately constituted corporation that contracted with CAT Express. As a corporation, it's not a driver. It could not have been an employee because it's a corporation. And those are uncontested on the record. IGV Express contracted three different trucks with CAT Express. And the hearing officer consistently used those two terms, owner-operator and driver, interchangeably. But the IGV Express very clearly shows that those are not interchangeable terms. And why is it important? Because payments from CAT Express were made to the corporation, IGV Express. IGV Express determined how much they were going to pay their drivers. And the contract itself said, IGV Express, you're responsible for your own driver's workers' compensation. And obviously, if IGV Express is responsible for paying for its own, it's a corporation that can't be an employee. It's not a driver. And I think that that's a very material fact that the hearing officer and Liberty Mutual in its briefing has missed that really turns this case on the issue of control. The other fact that I think that the hearing officer missed was with Gennady Rusu, who was the other owner-operator that we talked about at length. And importantly for him, one of the facts that the hearing officer just completely omitted is the fact that he actually contracted with customers for his own loads. Now, sometimes he got loads from CAT Express. Sometimes he got loads from his own customers. I think that that also is a very strong indication that, yes, this man was in his own business and that he was exercising control over his own business. He could get loads from broker customers. And, in fact, he communicated directly with those broker customers. That's on the record. That's undisputed. I guess I don't have anything further to just reserve the right. Thank you. Whichever. May I please record? I'm going to go right to jurisdiction. But before I do, one sentence. When counsel says it's undisputed and here's what the facts are and he's not citing to the record, all he's doing is arguing. Jurisdiction, right? There's no quoting substance. We don't have jurisdiction. I believe we do have jurisdiction. I believe this court was quite correct in Rett-Fragging 462. Upon careful analysis, the wording of the appeals board was such that they were it could be read to invite an appeal where jurisdiction doesn't lie. I suppose, theoretically, you could appeal the decision that there's no jurisdiction. But what actually happened was that the insured exercised their administrative rights. They basically filed a consumer complaint with the Department of Insurance concerning an insurance policy that had to be signed under the Illinois Workers' Compensation Act. And the court ruled that the insurance policy had to be signed under the Illinois Workers' Compensation Act. And the court ruled that the insurance policy had to be signed under the Illinois Workers' Compensation Act. The authority of the issue. So that's how you're explaining the issue? Yes. Okay. So you don't agree that the issue is whether these there was a whether they were employees, these third-party employees or independent contractors? To answer the first part, that finding had to be made. You don't know the issue? Why is the rate? Rates? Percent? That's not the question. I have nothing to do with rates. Well, I agree. 462 speaks to rates. You could make the argument, well, if you file more drivers, then the class code comes in. That's a rate. I'm not making that argument. I think I agree with this court. If we were based in jurisdiction under 462, it's not there. It's not there. It's not explicit anywhere in the insurance act. It's not explicit that they have jurisdiction for this situation. The DOI is directly charged with supervision of the Illinois Workers' Compensation Act. And 401 is where the authority lies. And 401C is the authority to conduct the hearing. The hearing, the factual determination is necessary. The function toward making the determination and applying the workers' compensation. Why would the workers' comp commission be making that decision if it's under the workers' comp act, if you think that status issue is decided? Absolutely. I mean, in a perfect world, if we could get to that. So if it's absolutely, it's either or both, are you saying? Well, my opinion with jurisdiction-wise, Your Honor, is I think the subject court has concurred jurisdiction with the Department of Insurance in this matter. What about the workers' comp commission? I think you have to have an injured claimant. Right. I would agree with that. Okay. So we're taking in this issue, this case, these parties. Yes. The workers' comp commission would not be the appropriate forum to decide the status of these individuals. Correct. I mean, it's incidental, but on the compensation commission's website, it does refer all disputes to consumers to the Department of Insurance. Well, again, I think you would agree that if the website referred them to the Illinois Department of Professional Regulation, that wouldn't make it so. I agree. I would agree. So we have no legal issue. So, I mean, both sides agree, you know, it could go to a damage. The question for us is was it appropriate to go before the Department under the rules and regulations and statutes that apply here? Yes. I mean, it's odd for me to argue in the sense because being an administrative action, we have no say in the matter. It's the insurer's right to exercise administrative review. And it did. The insurer could have withdrawn their action at any time. Our only request would be to go to the circuit court. And I believe here, could they have gone directly to the circuit court? Certainly. And it didn't have to be a deck action. It could have gone before the tax and miscellaneous remedies. They're the ones who review the decisions of the workers' comp commission. Yes. That's the law division. That seems like the most likely place for this case to be. I agree, Your Honor, in the sense that now that it's been disposed of and it's under 401, I believe that jurisdiction either have it or they don't. I believe it's concurrent. I believe the Department does have jurisdiction. And that's under 401, 2, 3? Yes. 401 is the broad authority of the Department. 401C, I think, gives the Department the right to conduct the factual hearings. Hearings about what? See, that's the issue. Does that give them jurisdiction to conduct hearings on whether my garage encroaches on my next-door neighbor's homeowner's policy? No. Is that what they do? I don't think so. And I agree, Your Honor, that it's not – I can't read the statute, but I can plug into this case. What I can say is they have broad authority to decide insurance matters, including specifically Illinois workers' compensation insurance questions. To affect that authority, they need to decide factual matters. In this case – Yes. If they have jurisdiction, they need to resolve the facts to a point. Right. And they have been doing so. Now, I mean, for example, strategy or things that could be done. Well, certainly you could state a litigation, go to circuit court for the facts, come back to implement strictly the Comp Act. But, I mean, I'm speaking of things. Now, could they do what they did? My belief is yes. The Department of Insurance was within their authority. I should add a slight aside to this, too. Particularly because the concern seems to be the cost of determining employer-employee status. The second part, which the Department didn't rule on because they didn't need to, is the question of are uninsured subcontractors engaged in an extra-hazardous occupation, i.e., here, carriage-by-ride, automatically required to be covered by law? Now, the merits of the case were not gotten to by the Department because they decided the employer-employee. But I will point out for purposes of jurisdiction, that's a straight-up insurance question. No determination of employment status is required. Well, but it seems to me, and I haven't given this a lot of thought, but that's a question of whether the employer is complying with the insurance requirements of the state of Illinois. Correct? Is that the way you're saying it? Well, no. No, in the sense of the best analogy is when you go to a construction site that it's, you know, they're not a construction site without a hard-handed certificate of insurance. They don't have to insure uninsured subcontractors engaged in extra-hazard. They're not violating the law. Okay. But if they don't have certificates, they will be brought in on the honor, on the exposure, because those injured workers will file claims and we will be liable to pick them up. So they aren't required by law, but it is an exposure. Well, okay, if it's exposure, what does the Department of Insurance have to do with that? Isn't that a question of now that they have exposure, who's going to be responsible for that exposure, either them or the insurance company? Correct? Their insurer. We absolutely insure us will be responsible for that. Okay. But that's not, that wouldn't be dictated by the Department of Insurance. It would be dictated by a legal determination through a lawsuit, a deck action, something saying there's a breach of contract or a deck action, we're not responsible for these guys because they didn't tell us about them, we didn't know about them, all that. I don't disagree with you, Your Honor. Okay. In fact, the other way I hesitate is if I had leave to file, if I can ignore the administrative, I say, why don't we go to circuit court? I have no need for discovery, I can file a pleading. Admittedly, the Department of Insurance is more versed in insurance law, but when you want to do discovery, it's easier a mechanism or way to work. But I honestly believe, particularly if we're talking uninsured subcontractors, that's an insurance question, the Department does have jurisdiction. There's no question in my opinion the circuit court has jurisdiction as well. Right. So it seems as though everyone here agrees, well, not everyone, but of the three of you agree that the Department of Insurance has jurisdiction. That seems like what we're hearing. That is the position of Liberty Mutual. Yes, Your Honor. I agree with everyone. What you're saying, everybody, I don't know. It seems like concurrent jurisdiction. Yes, concurrent jurisdiction. No findings of fact by a lower court, a trial court, a hearing officer, I'm not aware of anywhere a battle court would review those. Well, in order for me to know, it needs to be a strictly legal question. Yes. And your position is it's not that. No. So you believe that it's somewhere between clearly erroneous and manifestly erroneous. Yes. I mean, I think it's a mixed question of all facts. So you believe it's clearly erroneous. That's what clearly erroneous is. Yes. If you look at the finding of facts right there, you take the facts and you apply them to the law of the Insurance Act, clearly erroneous, Your Honor. And I think one of the justices who spoke earlier said once if we do get to the merits, it's a fairly straightforward review. And I think it is. Robeson, Supreme Court, you have these factors that you look into. The hearing officer articulated all those factors. They articulated it in a manner favorable to Liberty Mutual. I probably don't have the time to show a few of the lesser ones where even then, in fact, the record supports us. Tulsa alluded to a few of them. I think he talked about interoperators versus drivers. But the hearing officer is wrong. The Justice Mutual is wrong. The record is wrong. This is semantics. This is wordsmithing. You know, drivers drive trucks. Drivers get hurt. Drivers create the expenditure. Drivers get paid under the Workers' Compact for damages. That's what was found. The standard for review is a high one, be it clear or manifest evidence. The way … Well, manifest evidence is not the same as clear. Yeah, I'm sorry. Be it manifest or clear. Considering it's a clear, for the sake of not overreaching, Justice, the hearing officer clearly laid out a roadmap consistent with an analysis consistent with the Supreme Court, and Robeson made his decisions, weighed the evidence, and reached a finding that the drivers were indeed employees. Tulsa puts charts together and is brief, but Robeson says, no, fact-specific. You don't compare cases to cases. He says, no, if I could talk about the unpublished opinion, is it correct anyways? But, yes, ESPRINCA doesn't stand for the proposition that here's what we found. I mean, where employee Robeson, where ESPRINCA Robeson … Did you ever take decisions from the Illinois Department of Employment Security because they decide these issues all the time? They do. The difference there now, I believe, is there's statutory guidelines now. Yeah, exactly. It makes it so much easier to decide. It does. It does. I mean, there's factors, and you plug them in directly. Yes. Ultimately, the legislation … My public policy statement is the point of the Illinois Workers' Compensation Act is to provide protection to workers. We mention a lot about the relativity test. The work performed relative to what the reported employer does. That's the same thing the Illinois Department of Security does. Illinois Department of Employment Security, that's the same purpose. And ESPRINCA has some very nice quotes on it. It's saying, look, if this is your business and these people work for you in this business, they're entitled to protection under the act. It's not meant to be … There's no independence here of these drivers. They drive under the authority of CHAT. The tractors and trailers, many of them are CHAT. They sign pre-employment applications. Lady of Red, they sign a form that says they're independent contractors. But these cases always have facts on both sides. ESPRINCA, which counsel mentioned, for me, stands to a proposition the appellate court's saying we're not getting in the weeds. As long as the position was correctly decided in terms of the analysis, the factors and it was weighed, we're going to affirm the trial court. If there's a clear error, if there's something outside of the boundaries … This is the administrative agency. Yes. This is a direct appeal. So this came up through the circuit, yes, through the administrative agency appeal. I just want you to speak correctly. Yes. Otherwise it's causing confusion. And everybody needs to make sure we're talking about the same thing all the time. So I realize the greater issue is pure friction. I think it's here.  Thank you, Judge. Thank you, Judge. Thank you. So what say you about jurisdiction? Good afternoon, Your Honor. This is Juliette D'Azur with the court. I'd like to clarify the department's position a little. The department's position is that it has implied jurisdiction, that is statutory authority, to adjudicate disputes among insurers and insurers over whether particular workers are employees or independent contractors under Section 462 and Sections 401 to 403 of the Insurance Code. Section 462 … So the question, what about the … Is there concurrent jurisdiction, you believe? Yes. Yes. Under Section 462 in combination with these other provisions. So the case could have been brought in the circuit court? Yes. Okay. Section 462 provides for the department to review the decision or rating organization here at the National Council of Compensation Insurance through its appeal board. Is there any case, any decided case, where this issue has been brought, decided by the insurance department? No, Your Honor. The only decision I'm aware of, and it's an unpublished case, is the Liberty v. Super Trucking that has been cited by … Which Justice Pierce was the author of. Yes, Your Honor. Well, let's get right to the quick on 462. 462 says the department will review a dispute with respect to the application of the rating system. That's not the issue here, as I see it. Well, the department construes application of the rating system to include determinations that have to be made before they apply the rules of the NCCI. So rules about who they're going to, whom, to whom they're going to apply the rules. So that is why they consider the determination. That's not in dispute here. Well, yes. They apply the, the rules apply to people that have been designated as employees. But the dispute here isn't a misclassification of the employee. Correct? That's right. It's not a dispute as to the premium charged for these employees under the policy. Correct? Right. Except for the set where they're saying they shouldn't be charged at all. The dispute is the status of the people that they say exist or don't exist. It's an employer-employee relationship, which is not within the NCCI's purview. Correct? That's right, Your Honor. But the department says that in order to be able to apply the NCCI statutes, we have to first decide whether the person is an employee. That's a question of statutory interpretation. If this court disagrees, the department will abide by the court's decision. And the other aspect of the matter, they also look to 401C because the hearings about employees and dependent contractors are not specifically provided for. Section 401C provides that they can hear things that are not specifically provided for as may be necessary and proper for doing the other things that they're required to do. So the department says that Section 462 and Section 401C together give them the statutory authority. Thank you. Do you have anything else? No. With respect to the remaining issues, we'll stand on our briefs. And to the extent that this court concludes that there is jurisdiction to adjudicate employment status disputes, we urge it to affirm the circuit court's decision. Thank you. I want to be brief, and I want to address two parts, one dealing with the jurisdiction issue and one dealing with the underlying merits. In the hearing, regardless of the fact that I think there's a lower standard of deference, which I believe there is given the expertise or lack thereof of the Department of Insurance on this question, the hearing officer's decision on its own still had errors that would meet the clear error standard. One of the factors you look at is materials, furnace, and ownership of truck. The hearing officer conceded that the owner-operators were responsible for all their own costs, fuel, tolls, taxes, and everything else. The only other thing that the hearing officer said, the only other thing that he pointed out regarding that materials-furnished factor, is he says the policyholder acted as the owner, or policyholder being Cad Express, acted as the owner or leanholder of the truck until the tractor-trailer was paid according to the terms of the lease agreement. He uses that finding, quote-unquote, finding of fact, to lead to the conclusion that while Cad Express supplied the equipment. The undisputed facts in this case are, and why I pointed out IGV Express, there were 10 out of the 40 that were under a lease-to-own program. The other trucks, the other 30 trucks were not. IGV Express, which I pointed out, had their own trucks. They owned the trucks. So the one fact that he's relying upon under the ownership of truck factor, or supplying the material factor, is not true based on the record. And counsel chided me for not citing to the record. I will cite to A56 and 57 for the discussion about IGV Express. And I'm not going to go any further into detail on that. That is laid out in our briefs. The other question is about the question of jurisdiction. Counsel brought up the issue of ultra-hazardous activities. Carriage of land is an ultra-hazardous activity. However, the Workers' Comp Act, and this is in the Workers' Comp Act, not under the Department of Insurance, but it's in the Workers' Comp Act, and it talks about who has to cover the subcontractors. And under the act, under 320-820-ILCS-305-183, it refers to anyone engaging in any business or enterprise referred to in subsections 1 and 2 of section 3. So now people that have to cover, make sure subcontractors are covered. Let's go down to subsection 3, and it says, subsection 1, people who are involved in erection, maintaining, removing, remodeling, altering, or demolishing structures. And subsection 2 is people engaged in construction, excavating, electrical work. My client isn't involved in either of those. CAT Express isn't involved in either of those two. So the argument that Liberty Mutual could have had to possibly cover these subcontractors is not backed up by the statute. The statute is very clear. And that question, as I said, that question is in the Workers' Comp Act, not in the insurance code. Thank you. I thank all parties for your original briefs, for your supplemental briefs, for your arguments. Obviously, this is a unique question, and we'll take it under advisement, and we'll be ruling subsequently. So thank you very much. We're open to the argument.